*E-FILED - 5/9/08*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH DAGNINO JR., | No. C 03-4654 RMW (PR) |
|     Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
|     v. | |
| DERRAL G. ADAMS, Warden, | |
|     Respondent. | |

**INTRODUCTION**

Petitioner Joseph Dagnino, a California state prisoner who is proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that various errors at his trial resulted in unconstitutional convictions for burglary and assault. The court issued an order to show cause why the petition should not be granted.[1] Respondent has filed an answer and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and will deny the petition.

---

[1] This is in fact the second amended petition. Because it is the operative petition, the court shall refer to it as the "petition."

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.03\Dagnino654.hcruling.md

## BACKGROUND

The California Court of Appeal summarized the facts as follows:

> [Petitioner] entered a K-Mart, grabbed an anchor and swung it at two employees, grabbed a bicycle, left the store with it[, riding on it in fact], and then threw the anchor at the same two employees and a third who was with them [as he rode off on the bicycle].

People v. Dagnino, No. H023214, 2002 WL 31895658, at *1 n. 1 (Cal. Ct. App. Dec. 30, 2002) ("Op.") The Santa Clara Superior Court, after a bench trial, found petitioner guilty of second-degree robbery (Cal. Pen. Code §§ 211-212.5(c)), second-degree burglary (Id. §§ 459-460(b)), grand theft (Id. §§ 484-487(a)), and three counts of assault with a deadly weapon (Id. § 245(a)). Op. at 1; Ans., Ex. 1 (Felony Complaint) at 35-37. The trial court also found that petitioner personally used a deadly weapon (Cal Pen. Code § 12022(b)(1)), had served four prison terms, and suffered eleven prior felony convictions. Op. at 1; Ans., Ex. 1 at 35-37. All eleven felony convictions constituted strikes and four of these were considered serious felonies. Id. The trial court sentenced petitioner to a total term of forty-six years to life. Id.

Petitioner appealed. The California Court of Appeal for the Sixth Appellate District affirmed the conviction. Id. at 7. The California Supreme Court denied his petition for review. Order to Show Cause ("OSC") at 2. Petitioner filed a state habeas petitions, later denied, in the state superior and supreme courts. Id. Petitioner filed the instant federal habeas petition in 2003 and then a first and then a second amended petition. Id.

As grounds for federal habeas relief, petitioner alleges that: (1) he received ineffective assistance of trial counsel; and (2) he was denied the right to represent himself pursuant to Faretta v. California, 422 U.S. 806 (1975), when he made a timely, unequivocal request to represent himself and repeatedly stated that he wanted to represent himself and was not requesting a continuance. OSC at 3.

## STANDARD OF REVIEW

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a petition with respect to any claim that was adjudicated on the merits in state

court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. (Terry) Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-1092 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. See Ylst at 801-806; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. Id. If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the

jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

**DISCUSSION**

I.      Ineffective Assistance of Counsel

Petitioner contends that trial counsel rendered ineffective assistance when he (A) failed to introduce into evidence the contents of a video tape; (B) failed to present medical evidence that petitioner could not walk, run, or ride a bicycle properly; (C) failed to object to the presence of a witness at the preliminary hearing; and (D) coerced petitioner into waiving his right to a jury trial.[2] Pet. at 6-10.

Claims of ineffective assistance of counsel are examined under Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong. See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

A.      Videotape Evidence

Petitioner contends that trial counsel rendered ineffective assistance by failing to present K-Mart videotape evidence of the commitment offense. Pet. at 6.

---

[2] Owing to a great similarity of the allegations, the court has consolidated petitioner's eight claims stated in the second amended petition into the four stated above.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.03\Dagnino654.hcruling.md          4

K-Mart's Loss Control Manager, Hector Velasquez, testified that the only portion of the incident captured on film was of a person exiting the store with an anchor and a bike. Ans., Ex. 2(B) (Reporter's Transcript, Aug. 25, 2001) at 157, 164, 166. Velasquez testified that after reviewing the tape, which was of poor quality because of its age and because it had been repeatedly recorded over, revealed "one free shot of the suspect exiting the door, real fuzzy, not much." Id. at 164. "We did not get much but one still frame of the subject exiting with a gray shaded area on his hand." Id. at 166.

Based on this record, petitioner's claim is without merit. He fails to state how the introduction of the footage would have aided his defense. Rather, he asserts that it is highly suspect that there is not more footage, speculating that K-Mart must have other recordings of the incident. Pet. at 10. From the testimonial evidence presented, the court finds it unclear how this fuzzy (and possibly incriminating) footage would have aided his defense in any way. Without such assertions or evidence, petitioner cannot show either that trial counsel's performance was deficient in failing to introduce the videotape evidence or that this alleged deficiency resulted in prejudice to petitioner.

B.   Medical Evidence

Petitioner contends that trial counsel rendered ineffective assistance by failing to introduce a file of medical evidence or testimony from his doctor that petitioner had difficulty walking and riding a bicycle. Pet. at 6. During trial, petitioner, who stated that stated that he was unable to walk without "a brace and a little gadget," testified from a wheelchair, his back having been injured from a gunshot would sustained years before and his right leg being paralyzed. Ans., Ex. 2(B) at 168-69. The arresting officer did not see a brace on petitioner's leg when he arrived at the scene. Id. at 106.

Trial counsel explained to petitioner that she could not introduce the medical documentation because it was hearsay, reasoning the trial court confirmed as correct, adding that the jury would require a doctor to explain the contents of the medical record. Id., Ex. 2(A) (Reporter's Transcript, Mar. 5, 2001) at 58. Trial counsel did contact petitioner's doctor, who, according to trial counsel, was not an orthopedic specialist and who offered nothing that would be helpful to petitioner's case. Id. at 51. Petitioner repeatedly refused to waive time to see an orthopedic specialist, despite trial counsel's requests. Id. at 51-52. By the time petitioner agreed to waive time, the trial court had

already ordered a jury. Id. (Reporter's Transcript, Apr. 24, 2001) at 75-76.

Based on this record, petitioner's claims are without merit. Trial counsel did try to present the evidence petitioner asked to be introduced, but the rules of evidence and petitioner's own lack of cooperation prevented her from so doing. Because petitioner has failed to show that trial counsel's performance was deficient, the court need not reach the question of prejudice. Siripongs, 133 F.3d at 737.

### C. Exclusion of Witnesses

Petitioner contends that trial counsel rendered ineffective assistance when she failed to exclude a witness, Hector Velasquez, a K-Mart employee, from the courtroom during the preliminary hearing, during which another witness, Bobby McGhee, also a K-Mart employee, testified. Pet. at 6.

Petitioner's claim is without merit. First, trial counsel did move to exclude witnesses from the preliminary hearing. Ans., Ex. 1 (Transcript of Preliminary Hearing, Feb. 26, 2001) at 3. Second, Velasquez, though later a trial witness, did not testify at the preliminary hearing. In fact, McGhee was the only witness who testified at that proceeding. Id. at 2, 4. Because trial counsel did move to exclude witnesses, petitioner's claim that she performance was deficient clearly is without basis. Because petitioner has failed to show that trial counsel's performance was deficient, the court need not reach the question of prejudice. Siripongs, 133 F.3d at 737.

### D. Waiver of Jury Trial Right

Petitioner contends that trial counsel rendered ineffective assistance by coercing him into waiving his right to a trial by jury. Pet. at 8-9.

Petitioner's claim is without merit. The record is bare of any evidence of coercion. Rather, the transcripts show that petitioner twice asked the trial court whether he could dispense with the jury and "just go with you." Ans., Ex. 2(A) at 55, 93. After the first request, the trial court informed petitioner that he could waive his right to have his case judged by a jury, but that "that's a decision you have to make." Id. at 55-56. After the second request, the trial court granted a recess so that petitioner could discuss the matter with trial counsel. Id. at 57-58. After some discussion, trial counsel stated that she did not know whether petitioner would choose a court or jury trial. Id. at 94.

Petitioner then stated that he wanted a bench trial. Id. The trial court accepted the waiver, after it was assured by petitioner that he understood the right, that no promises or threats had been made to him to give up this right, and that petitioner was not under the influence of alcohol or drugs.[3] Id. at 95-97. Based on an examination of the record, petitioner has not shown that trial counsel in any way coerced him into waiving his right to a jury trial – he in fact insisted on it without prompting from trial counsel – nor that trial counsel's performance was deficient. Because petitioner has failed to show that trial counsel's performance was deficient, the court need not reach the question of prejudice. Siripongs, 133 F.3d at 737.

II.     Faretta

Petitioner contends that the trial court violated his Sixth Amendment right to self-representation when it denied his Faretta motion.[4] The state appellate court found that the trial court properly denied the motion because "[petitioner's] request was not an unequivocal request based on a consistent, firm, and well-considered desire to represent himself," but rather was "made out of anger and distrust of appointed counsel . . . . and a fatalistic belief that if he was going to lose anyway, he would do so himself." Op. at 6.

The facts from which petitioner's claim arises are given at length by the state appellate court as follows:

> At a hearing on March 5, 2001, appointed counsel reported to the court that [petitioner] wanted to represent himself. After reviewing a Faretta waiver form, [petitioner] said he did not so much want to represent himself as get a different attorney. The court - Judge Hugh Mullin - then conducted a Marsden hearing. However, he deferred ruling in order to determine whether he had to recuse himself.
>
> On March 7, the hearing continued before Judge John Ball. At that time, trial was scheduled for April 25. After listening to [petitioner's] complaints and counsel's response to them, the court denied the request. [Petitioner] then submitted a completed Faretta waiver form, stating that the court had given him no choice but to represent himself. The court opined that [petitioner] was making a mistake. [Petitioner] agreed but wanted to go forward. After warning [petitioner] about the perils of self-representation, the court granted the request. However, after a brief recess, [petitioner] changed his mind about representing himself and said he would proceed with appointed counsel.

---

[3] Petitioner did state that he was taking medications to treat pain and his heart condition, but that these medications did not affect his thinking. Ans., Ex. 2(A) at 95-96.

[4] Faretta v. California, 422 U.S. 806 (1975).

On April 18, [petitioner] wrote to Judge Ball, indicating that he wanted to substitute counsel. On April 24, Judge Alden Danner conducted a second <u>Marsden</u> hearing. After [petitioner] explained his various complaints and counsel responded, the court denied the motion for substitute counsel. The court then responded to comments by [petitioner] indicating that he might want to represent himself but that he did not know how to do so. The court asked if he understood that the case was set to go to trial. [Petitioner] said he was ready. Noting that the jury would be called that day and selection would begin the next day, the court asked if [petitioner] really wanted to represent himself or have appointed counsel do so. [Petitioner] said, "If she gives me my medical files, I'll do it myself. I know she is not going to put her heart into it." The court opined that the law required counsel to perform in a professional manner and probably did not require that she "put her heart into it." The court again asked if [petitioner] wanted to represent himself and if he recalled Judge Ball's warnings about self-representation. The court also explained that if he defended himself, he would be giving up the right to complain on appeal that appointed counsel was incompetent. [Petitioner] said he understood but also said he was "scared [that counsel was] not going to use the medical. That's what I'm tripping on." He then asked, "[D]o you agree with this, nothing guarantees capitulation of an innocent person faster than a lawyer that is incompetent or that lacks resources?" The court said it had to think about that. [Petitioner] asked if he could have a court trial instead of a jury trial. The court said he could but pointed out that if counsel had recommended a jury trial, he should consider it very seriously. In response, [petitioner] complained that counsel was not going to use his medical files. The court warned that his decision to represent himself and/or waive a jury should not depend on whether counsel intended to use the files. [Petitioner] then asked whether he could "waive a week" so he could be examined by a medical specialist. The court explained that he could waive his right to a trial within 60 days of the arraignment and that when he withdrew his waiver, a new 60-day period would begin to run. [Petitioner] said he would waive time, but the court told him to confer with counsel about this. Before calling a recess, the court wanted the record to be clear concerning whether [petitioner] wanted to represent himself, stating, "I take it from what you're telling me by burying the hatchet and stuff like that that you want to go with [appointed counsel] and proceed with her; is that right?" [Petitioner] said, "If she uses my medical file. If not, I can probably[.]" At that point, counsel said she could not simply present the files to the jury. The court agreed that [petitioner] would need an expert to present any medical information to the jury. [Petitioner] said he would ask his family to get a doctor to examine him in front of the jury. The court said that would not be allowed. [Petitioner] then asked counsel why she did not subpoena a particular doctor, but before counsel could answer, the court called a recess so [petitioner] and counsel could talk.

When the hearing resumed, the court said he would proceed with the in limine motions. However, counsel reported that [petitioner] wanted to make a request. [Petitioner] said, "I'll do it myself." The court asked, "You would like to represent yourself?" [Petitioner] said, "Yes, sir." The court asked [petitioner] to review the <u>Faretta</u> waiver form. After doing so, [petitioner] said his answers were the same. The court noted that [petitioner] did not list any defenses and asked if he thought there were no legal defenses. [Petitioner] answered, "Yes." The court asked whether he knew the possible sentence he faced on the charges and that the prior conviction and enhancement allegations could make the sentence even longer. The court also asked if he understood that self-representation is almost always unwise; his freedom of movement in the courtroom would be restricted; the normal rules of evidence and procedure would apply; he would face an experienced prosecutor; he would not receive special privileges; and although he had the right to appointed counsel, he would be surrendering this right and not have the assistance of an attorney at trial or for post-trial motions.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.03\Dagnino654.hcruling.md          8

[Petitioner] responded, "I think you misunderstood me. I'll represent myself but I'd like somebody else to represent [me], [] not [appointed counsel]. We have a conflict, me and [appointed counsel]." Nevertheless, [petitioner] said he knew the court would not give him another attorney. The court reminded [petitioner] that it had rejected his complaints about counsel and then said[,] "So that's why we're seeing if you want to represent yourself. But you really have to want to represent yourself. I'm not going to let you do it if you don't really want to do it." [Petitioner] said he could not proceed with appointed counsel and then started talking about a specific piece of evidence and his discussions with counsel about it. The court then excluded the prosecutor so [petitioner] and counsel could discuss the matter.

[Petitioner] reasserted his complaints about counsel. The court told him that counsel was trained and that he probably did not fully understand the reasons for her tactical decisions. The court reiterated that if defendant represented himself, he could not later claim that he was incompetent to defend himself. [Petitiner] said he understood but felt that counsel was not "putting her heart into [his defense]." The court said they had already talked about this. The court emphasized, "What's important for you to look at is whether you can do a better job than she can. If you feel you can, you're doing the proper thing in asking to represent yourself. If you don't think that you can, it's kind of like suicide." [Petitioner] responded, "I'll let her fly the plane," but then added, "Can I be a copilot?" The court said he would not permit cocounsel status and directed [petitioner] to tell counsel everything he knew that could be of help to his case. [Petitioner] again started to complain that counsel had lied to him and then stated, "If I'm going to drown, I will drown. I'll do it myself."

Counsel tried to explain to the court why she thought [petitioner] distrusted her. [Petitioner] then said, "Judge, I will waive time. I want to go on my own, though. I want the doctor to check me and I want to go on my own." The court said there would be no waiver because the case was going to trial as scheduled. [Petitioner] inquired whether he could get a doctor so he could be examined, but the court said it could not give him trial advice and would only decide whether to allow [petitioner] to represent himself. The court continued, "[T]hat's what I'm trying to do is find out, whether or not you understand how serious it is. [¶] A moment ago I [asked] you who is the best person to represent you, yourself or her, and I don't want you to commit legal suicide by getting stubborn and saying I don't like her, I will do everything I can to shoot myself in the foot." [Petitioner] denied that that was his intent. He simply did not like or respect counsel. The court then reiterated that if he represented himself, he would have to behave in the courtroom and would have no help in making opening and closing statements, selecting the jurors, examining witnesses, and settling instructions. [Petitioner] said he understood. The court asked if [petitioner] also understood that the case would proceed without delay to pretrial motions, jury selection, and trial. [Petitioner] noted that counsel had no motions and said he was ready. However, the court told [petitioner] that counsel did have some motions, and counsel agreed. [Petitioner] then asked the court whether it was "good to take the stand." The court said, "Sometimes," but declined to give further advice. [Petitioner] said that if he did not take the stand, he could not explain his version of events. Counsel agreed with him. The court said that counsel had probably explained the pros and cons of testifying and that that was the sort of advice an experienced criminal attorney could offer him. In this regard, the court pointed out that if he testified, the prosecutor could introduce his prior convictions. [Petitioner] responded, "I'll go on my own, Judge."

At that point, the court asked if [petitioner] was familiar with legal procedures,

1
2
3   including motions in limine and bifurcation of trial concerning the charges and prior conviction allegations. [Petitioner] knew he should not open the door to the prosecutor. Although he had been tried before, he did not know what jury challenges were. The court asked if he knew he could question prospective jurors, but

4   [petitioner] said he had no questions. Finally, the court asked if "there [was] anything else you would like the Court to consider in your request to represent yourself."

5
6   [Petitioner] responded, "Give me another attorney." He continued, "I'm trying to iron out things and [appointed counsel] keeps making holes in the bone." The court said, "I understand what you're saying and I understand your frustration and I'll kind of hearken back

7
8   to something I said earlier. I sort of feel like you're doing this to hurt yourself, and I hate to see anybody do that." Defendant said he was joking.

9   The court ended the discussion and ruled on [petitioner's] request for self- representation. The court found that because the request was untimely, granting it was discretionary. Given the quality of counsel's representation so far, [petitioner's] repeated efforts to obtain a different attorney, his previous successful request to represent himself and immediate abandonment of it, and his limited legal understanding, the court denied the request.

10
11
12  Op. at 1-4.[5] A criminal defendant has a Sixth Amendment right to self-representation. <u>Faretta,</u> 422

13  U.S. at 832. While a trial judge may doubt the quality of representation that a defendant may

14  provide for himself, the defendant must be allowed to exercise his right to self-representation so long

15  as he knowingly and intelligently waives his right to counsel and is able and willing to abide by

16  rules of procedure and courtroom protocol. See <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 173 (1984).

17  But defendant's decision to represent himself and waive the right to counsel must be

18  unequivocal, knowing and intelligent, timely, and not for purposes of securing delay. <u>Faretta,</u> 422

19  U.S. at 835. The requirement of unequivocality serves two purposes: it ensures that the defendant

20  does not inadvertently waive his right to counsel, see <u>Meeks</u>, 482 F.2d at 467, and also prevents the

21  defendant from taking advantage of the mutual exclusivity of the rights to counsel and

22  self-representation, see <u>Adams v. Carroll</u>, 875 F.2d 1441, 1444 (9th Cir. 1989). If a defendant

23  equivocates, he is presumed to have requested the assistance of counsel. See <u>id.</u>; see also <u>United

24  States v. Bennett</u>, 539 F.2d 45, 49-51 (10th Cir.) (defendant who unquestionably vacillated between

25  representation by counsel and self-representation until 6 days before trial forfeited right to

26  self-representation). <u>United States v. Oakey</u>, 853 F.2d 551, 552-54 (7th Cir. 1988) (defendant's

27  request for self-representation with co-counsel found equivocal because no right to such "hybrid"

28

---

[5] Footnotes removed.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.03\Dagnino654.hcruling.md          10

representation; request to proceed pro se properly denied).  The court considers "three factors to determine whether a request for self-representation is unequivocal:  the timing of a request, the manner in which the request was made, and whether the defendant repeatedly made the request."  Stenson v. Lambert, 504 F.3d 873, 882 (9th Cir. 2007).

A waiver is not considered equivocal merely because defendant chooses self-representation rather than to be represented by counsel he believes to be incompetent.  See United States v. Allen, 153 F.3d 1037, 1041 (9th Cir. 1998).  However, a defendant's expression of a clear preference for receiving new counsel over representing himself may be an indication that the request is equivocal.  See Stenson, 504 F.3d at 883 (state court's determination that defendant had not made an unequivocal request was not an unreasonable determination of the facts where defendant made several statements that he really did not want to represent himself but felt the court and his existing counsel were forcing him to do so, defendant had tried to locate another attorney and had not included a request to represent himself in his final written request for new counsel, and requested a particular co-counsel be retained as his counsel).

Petitioner's claim is without merit.  Based on a review of the record in light of the Stenson factors and cases with similar facts, such as Bennett and Oakey, there is no evidence to support a contention that the trial court made a constitutional error.  Rather, the record contains evidence that petitioner's Faretta request was not unequivocal, as evidence by his making and withdrawing the request, his repeated vacillations, his insistence that he wanted new counsel when asked his reasons in support of self-representation, his clearly stating that his aim in representing himself was part of a belief that he would be convicted and then asserting that he was "joking," his request for "hybrid" representation, and the lateness of his second request, which he made the day before jury selection. Because of the evidence on the record, the court cannot say that the trial court made a constitutional error by denying petitioner's's Faretta motion.

## CONCLUSION

The court, having conducted an independent review of the record, concludes that the state court's adjudications did not result in any decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.

///

///

///

///

The court also concludes that the state court's adjudications did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

The clerk shall close the file.

**IT IS SO ORDERED.**

DATED:   5/9/08

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge